UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ARTHUR E. TAYLOR, JR.,            )
                                  )
            Petitioner,           )
                                  )
      v.                          )        No.  4:06CV1633 DJS
                                  )                        (TIA)
DAVE DORMIRE,                     )
                                  )
            Respondent.           )

# REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This cause is before the Court on Missouri state prisoner Arthur E. Taylor, Jr.'s pro se

petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2254 (filed November 9,  2006/Docket

No. 1).  All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant

to 28 U.S.C. § 636(b) for appropriate disposition.

On July 24, 2002, Petitioner was convicted by a jury in the Circuit Court of St. Louis County,

Missouri, of robbery in the first degree and armed criminal action.  (Resp. Exh. B at 32-33).  On

September 6, 2002, Petitioner was sentenced as a prior offender to two concurrent terms of twenty-

five years imprisonment in the custody of the Missouri Department of Corrections.  (Resp. Exh. B

at 37-38).  Petitioner appealed the judgment, and on September 2, 2003, Petitioner's conviction and

sentence were affirmed on direct appeal by the Missouri Court of Appeals.  (Resp. Exh. E; State v.

Taylor, 113 S.W.3d 689 (Mo. Ct. App. 2003)).  Petitioner thereafter filed a pro se Motion to Vacate,

Set Aside or Correct the Judgment or Sentence under Missouri Supreme Court Rule 29.15.  (Resp.

Exh. G at 4-55).  On April 13, 2004, Petitioner's appointed counsel filed a First Amended Motion

to Vacate, Set Aside or Correct Judgment.  (Resp. Exh. G at 61-124).  The post-conviction relief

court denied Petitioner's amended motion after an evidentiary hearing on January 12, 2005. (Resp. Exh. G at 150-58). On February 7, 2006, the Missouri Court of Appeals affirmed the denial of Petitioner's post-conviction relief. (Resp. Exh. J). Petitioner pursued no other action in state court.

Petitioner is currently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis County. In the instant petition for writ of habeas corpus, Petitioner raises three grounds for relief:

(1) That the trial court plainly erred by not declaring a mistrial *sua sponte* because the prosecutor's closing argument violated his due process rights;

(2) That he received ineffective assistance of trial counsel in that counsel failed to strike Venireperson Linda Butler, the daughter of a former housekeeper in the prosecutor's childhood home; and

(3) That he received ineffective assistance of appellate counsel in that counsel failed to raise the issue of the trial court's denial of Petitioner's motion to suppress his statements on direct appeal.

In response, Respondent contends that Petitioner has exhausted his claims inasmuch as they have been properly raised in the state courts or because Petitioner has no available non-futile state remedies by which he could present these claims.

## Claims Addressed on the Merits

Section 2254(d)(1) requires federal habeas courts to test the determination of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States

- 2 -

Supreme Court. Id., 529 U.S. at 380-83.

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 125 S.Ct. 1432, 1438 (2005). A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." Id. at 1439; Williams, 529 U.S. at 405. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

As an initial matter, the undersigned notes that the Missouri Court of Appeals summarized the facts regarding the issue on appeal as follows:

> Kim Maue ("Maue") was working at a convenience store in St. Louis County on October 8, 2001. She was in the process of cleaning the men's bathroom when Taylor entered the store. Taylor retrieved a bag of Fritos and laid it on the counter. When Maue rang up the Fritos, Taylor pulled out a semi-automatic handgun and said, "Give me all your money, bitch." Maue then tried to clear the transaction from the register so she could open the cash drawer, but had some difficulty. When she took longer than Taylor expected, he threatened to kill her.

> Finally, Maue removed the cash drawer and as Taylor took it, he triggered a silent alarm and fled the store. The police came to the scene and Maue described Taylor to them. Meanwhile, Taylor's girlfriend was wandering around nearby and Maryland Heights Police Officer Kaighin asked her for identification. She stated that she had none with her, but that she was staying in a nearby hotel. Officer Kaighin took her back to the hotel room and Taylor opened the door.

> Several police officers brought Taylor to the convenience store for a show-up, but Maue was unable to positively identify him. Maue was able to identify Taylor at the preliminary hearing and at trial. When questioned later that morning at his hotel room, Taylor told Maryland Heights Detective Richard White that he was partying

that evening with a friend named "Coco." Detective White researched that alias and discovered that it belonged to a Patrick Kline. He placed Kline's picture in a photographic line-up and showed Maue, who did not identify Kline as the robber.

Detective White and other officers also staked out Kline's house. As they were watching his house, Taylor and another man arrived and left shortly thereafter. The officers stopped them because the license plate on Taylor's truck belonged to another vehicle. They arrested Taylor for an unrelated matter and impounded the vehicle. After conducting an inventory search of the car, the police found clothing that matched the clothing Maue said the robber was wearing.

Detective White read Taylor his <u>Miranda</u> rights and Taylor waived them. Initially, Taylor denied any involvement in the store robbery and implicated Kline (a/k/a "Coco"). However, Detective White testified that in a second interview, Taylor spontaneously began crying and confessed to robbing the store to obtain food and money for his girlfriend and her baby. Taylor gave a videotaped statement to this effect, which was shown to the jury.

At trial, Taylor testified that he confessed because the police told him that his girlfriend would go to jail. He stated that he did not know who committed the robbery.

At the end of the trial, the jury found Taylor guilty of first degree robbery and armed criminal action. The trial court subsequently sentenced Taylor to two concurrent twenty-five year terms of imprisonment. Taylor appeals from this judgment.

(Resp. Exh. E at 2-3). Inasmuch as Petitioner does not rebut these factual findings by clear and convincing evidence, they are presumed to be correct. 28 U.S.C. § 2254(e)(1).

<u>Claims Addressed on the Merits</u>

1.  <u>Ground 1</u>

In his first ground for relief, Petitioner contends that the trial court erred in not declaring a mistrial *sua sponte* because the prosecutor's closing argument violated his due process rights. Petitioner raised this claim on direct appeal, and, upon review of merits of this claim, the Missouri Court of Appeals denied relief. (Resp. Exh. E at 3-6; <u>State v. Taylor</u>, 113 S.W.3d 689 (Mo. Ct. App.

2003)).

On direct appeal, the Missouri Court of Appeals rejected this claim by finding:

In his only point on appeal, Taylor argues the trial court plainly erred by not declaring a mistrial *sua sponte* when the State argued to the jury that defense counsel had lied to and manipulated the jury about Taylor's arrest history. Taylor also argues in this point that the trial court erred in overruling his objection to the State's comments that: (i) Taylor had a prior arrest history; and (ii) that "there was certain stuff we can't go into." Taylor contends that these errors denied him his right to due process and a fair trial because the State's argument improperly discussed his arrest history, made an unwarranted personal attack on defense counsel and referred to facts not in evidence, resulting in manifest injustice.

When reviewing for plain error, the court looks for error that rises to the level of manifest injustice or a miscarriage of justice. State v. Bozarth, 51 S.W.3d 179, 181 (Mo. App. W.D. 2001). Plain error is error that is "evident, obvious and clear." Id. It is the defendant's burden to prove that the State's comments had a "'decisive effect on the jury's determination," such that the verdict would have been different if the comments were not made. State v. Jones, 7 S.W.3d 413, 419 (Mo. App. E.D. 1999) (citation omitted).

In his argument, Taylor contends the trial court plainly erred by not declaring a mistrial *sua sponte* when the State argued "this case is about lies and manipulations, And you're the last victims to be manipulated in this case."

While an attack on defense counsel's character may be improper and prejudicial, an attack as to a defense strategy is permissible. State v. Ward, 807 S.W.2d 225, 226 (Mo. App. E.D. 1991); State v. O'Haver, 33 S.W.3d 555, 563 (Mo. App. W.D. 2000). Here, the comments Taylor complains of do not amount to a personal attack on defense counsel. The State does not mention defense counsel when it references the alleged lies and manipulations. On the contrary, at several times during its closing argument, the State specifically references Taylor's lies to the police and his attempts to manipulate them through his presentation of several stories regarding this crime. At one point in its closing, the State even identified "the manipulator" as "Mr. Taylor." The facts in the record reflect that Taylor originally confessed to the police, but on the stand testified that he did not commit the crime. Taylor also admitted lying to the police about his friend Kline's involvement in the crime. We find that the State's references to lies and manipulations in its closing argument were related to the facts of the case and Taylor's defense strategy, not to Taylor's counsel's character. As such, this argument fails.

Additionally, Taylor argues the State's comment that "I could not ask and no

officer can testify about arrest histories" relayed to the jury that Taylor had prior arrests which could not be presented to them and was against the trial court's ruling. Taylor also argues the State's comment that "I just have to tell you, there's certain stuff we can't go into," constituted an improper argument outside the evidence.

Specifically, the following took place during closing arguments:

[Defense counsel]: You heard also that Arthur Taylor has priors, Burglary and Stealing. Detective White says he ran records on Coco. Maybe they ran a record on Arthur Taylor. Did they --
[State]: Whoa, Judge, may we approach?
[Defense Counsel]: I'll rephrase.
[State]: No, Judge. Can we approach the sidebar?

... (The following was had at the bench:)

[State]: You just made a statement, did they run a record on Arthur Taylor, and they absolutely did. So if he's going to start criticizing the investigation of what they did or didn't do, I'm going to come right back through the frickin' door.
[Defense counsel]: Go ahead.
The Court: Well, I don't know that the objection is. I mean, --
[State]: I just want you to know that he's opened the door for me to start talking about his arrests, and anything else.
The Court: No. All he said was, did they run a record check. So to the extent that they ran a record check, I suppose it opens the door to that. But it doesn't open the door to arrests that he has.
[State]: The objection is, that any criticism of the police investigation --
The Court: I'm tolling your time.
[State]: He continually is criticizing the investigation, and apparently --
[Defense counsel]: That's my job.
The Court: <u>The objection will be overruled. It may allow you to comment on whether or not they ran a record check on him, but it does not open the door to arrests the defendant has.</u>

(emphasis added). Subsequently, during the State's final summation, it commented, "I could not ask and no officer can testify about arrest histories." Taylor's counsel objected, and the trial court overruled his objection. The State then made the following comment to the jury, "I just have to tell you, there's certain stuff we can't go into." Taylor's counsel objection to this comment was sustained, and the State simply concluded, "I just want you to know that a good investigation was done."

Taylor did not challenge the trial court's ruling that his argument opened the door regarding record checks and not arrests. The State's comment regarding the

arrest history did not include any detail of Taylor's alleged arrests. In addition, with respect to the State's comment that there was additional stuff that it could not go into at trial, the trial court sustained the objection and the State was not permitted to make additional comments regarding this matter. Finally, the State, in making this comment regarding additional stuff it could not discuss, did not refer to any particular evidence outside of the evidence presented at trial. Generally, the State is allowed some leeway in closing argument and it may argue matters outside of the evidence so long as the State does not imply special knowledge of evidence regarding a defendant's guilt. Jones, 7 S.W.3d at 419. There was no evidence of that in this case. As such, the trial court did not err in not granting a mistrial *sua sponte*. Point denied.

(Resp. Exh. E at 4-6).

At the time Petitioner's conviction became final, the law was clearly established that improper closing argument violates due process when the argument is so egregious that it renders the entire trial fundamentally unfair. See Darden v. Wainwright, 477 U.S. 168, 181 (1986); Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994). During closing argument, counsel may not "manipulate or misstate" evidence. Id. To decide whether improper argument violates due process, the Supreme Court held that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned," but rather, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (quoting Donnelly v, DeChristoforo, 416 U.S. 637, 643 (1974)). "Federal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial." James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). A prosecutor's challenged statements must be viewed within the context of the entire trial. Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir. 1995). Furthermore, under the AEDPA, standard of review, Petitioner must show that the state appellate court's adjudication of this claim was an unreasonable application of existing United States Supreme Court

law.  *See* <u>Weaver v. Bowersox</u>, 438 F.3d 832, 839-42 (8th Cir. 2006).  Indeed, the Eighth Circuit Court of Appeals has found that it has "an exceptionally limited review of this issue" due to the strict due process standard of constitutional review, the deferential standard mandated by the AEDPA, and the court's less reliable vantage point for gauging the impact of closing argument on the overall fairness of a trial.  <u>Sublett v. Dormire</u>, 217 F.3d 598, 600 (8th Cir. 2000) ( citing <u>James</u>, 187 F.3d at 869).

Petitioner raised this claim on direct appeal, and, after consideration of the claim, the Missouri Court of Appeals denied petitioner relief finding no claim of error establishing a manifest injustice or an exceptional circumstance.  Inasmuch as Petitioner does not challenge the factual findings made by the state court, such findings are presumed to be correct.  28 U.S.C. § 2554(e)(1).

A review of the record herein does not demonstrate that the prosecutor's remarks were so egregious as to fundamentally infect the entire trial or pervasive enough to render the result of the trial unreliable.  As determined by the Missouri Court of Appeals, the State's comment regarding lies and manipulations related to the facts of the case and counsel's defense strategy, not to defense counsel's character.  (Resp. Exh. E at 4).  Likewise, the Court of Appeals found that Petitioner "did not challenge the trial court's ruling that his argument opened the door regarding record checks and not arrests."  (Resp. Exh. E at 6).  Thus, it cannot be said that the comments rose to the level of a constitutional violation or that absent such a comment, the jury could not have returned a guilty verdict.  <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993) (on a habeas petition, the court's review of any improper reference is to determine whether it had a "substantial and injurious effect or influence in determining the jury's verdict") (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)).  Therefore, because Petitioner has failed to demonstrate that the prosecutor's comments

rendered his entire trial fundamentally unfair, the claim raised in Ground one of the instant petition is without merit.

Inasmuch as the Missouri Court of Appeals determined that Petitioner failed to demonstrate that, absent the prosecutor's comments, the verdict would have been different, it cannot be said that its determination runs "contrary to" clearly established law that the determination whether to grant a mistrial is within the sound discretion of the trial court. Petitioner offers no evidence that the prosecutor's comments influenced the outcome of the trial or that the comments produced a fundamentally unfair trial or resulted in a violation of petitioner's due process rights. As such, Petitioner has failed to establish any grounds that would necessitate a mistrial. Nor can it be said that the Missouri Court of Appeals' determination constitutes an unreasonable application of this clearly established law. Therefore, the claim raised in Ground one of the instant petition should be denied.

2.      Ground 2

In his second ground for relief, Petitioner contends that his trial counsel was ineffective for failing to strike venireperson Linda Butler, the daughter of a former housekeeper in the prosecutor's childhood home. Petitioner raised this claim on direct appeal of the denial of his postconviction relief, and, upon review of merits of this claim, the Missouri Court of Appeals denied relief. (Resp. Exh. J at 2-6).

The Missouri Court of Appeals rejected this claim by finding:

> In his first point, Movant argues the motion court clearly erred in overruling his Rule 29.15 motion. Movant contends that he proved facts showing his trial counsel was ineffective for not moving to strike, for cause or peremptorily, Venireperson Butler, who personally knew the prosecutor. We disagree.
>
> Appellate review of the denial of a post-conviction motion is limited to the determination of whether the findings of fact and conclusions of law are "clearly

erroneous." Rule 29.15(k). Findings of fact and conclusions of law are clearly erroneous only if, after a review of the entire record, the court is left with a definite and firm impression that a mistake has been made. State v. Tokar, 918 S.W.2d 753, 761 (Mo. banc 1996).

To show ineffective assistance of counsel, the movant must show that counsel "failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances," and that the movant was prejudiced by counsel's failure to competently perform. Id. (citing Stickland v. Washington, 466 U.S. 668, 689 (1984)). If either the performance or the prejudice prong of the test is not met, then we need not consider the other, and the movant's claim must fail. Goudeau v. State, 152 S.W.3d 411, 416 (Mo. App. S.D. 2005). To satisfy the performance prong, the movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Id. (quoting State v. Simmons, 955 S.W.2d 729, 746 (Mo. banc 1997). Prejudice exists when there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. Tokar, 918 S.W. 2d at 761.

In his motion, Movant alleged his trial counsel was ineffective when he "failed to move to strike for cause or peremptorily remove [Venireperson Butler], who personally knew and 'grew up' with the prosecutor." Movant claimed that "reasonable counsel would have followed up with questions for [Venireperson Butler] pertaining to the bias this relationship would presumably have caused." Movant also asserted that competent counsel would have moved to strike Venireperson Butler for cause or peremptorily removed her.

During voir dire, Venireperson Butler stated that she knew the prosecutor personally, and that they had "sort of like grew up together" because her mother was "employed by his family." Venireperson Butler affirmed that her familiarity with the prosecutor would not interfere with her ability to be fair and impartial. The prosecutor approached the bench and pointed out for the court and defense counsel that Venireperson Butler's mother had been his family's housekeeper. Movant's trial counsel asked no further questions of Venireperson Butler. At the end of voir dire, trial counsel made no attempt to remove Venireperson Butler from the jury, and she made the final panel, and ultimately became the foreperson. Upon inquiry, trial counsel informed the court that he and Movant had discussed striking Venireperson Butler, but came to the conclusion that she would be better for the defense than the other jurors they struck.

At the hearing, Movant's trial counsel testified that:

I wasn't sure on how to think about the fact that her mother

worked for your mother. I remember discussing this with my client. I know your father was a very wealthy person, owned a very large house. She worked there not as a vice-president, but as a servant there. Basically the daughter of a maid for someone, some affluent people. I felt that that's not a friendship or anything. Sometimes that builds resentment. A daughter of a maid who basically used to be in charge of serving ones family would consider themselves good friends or equal to those people?

Trial counsel also explained why he felt that the positive aspects of including Venireperson Butler on the jury panel outweighed any potential negative effects from her association with the prosecutor:

Basically my opinion was this, number one, she was an African-American female, which I liked, because this came down to a case of police credibility. My client was an African-American male accused of robbing at gunpoint a white woman. I based my decision on I had done approximately 30 prior jury trials. I have done voir dire on all of them. I find that matters of police credibility, African-American jurors sometimes make better jurors, not always. But this is what I based my decision on.

\*      \*      \*

The main thing was I think I paid close attention to her mannerisms throughout the voir dire. When I was doing my voir dire, I would say points that I felt were strong I saw her nodding her head a lot, going along with me. At times when you were answering questions or asking questions, I could see her cross her arms, and she appeared to be someone who would had some disbelief when it came to the State's case. Just her mannerisms struck me in that way. I felt comfortable with her. I felt she was a strong person, would stand up. I talked to [Movant]. I told him, I said, I don't think she is a servant. She is not his friend. We do want African-Americans on this jury. We want a cross section of the community on this jury. She represented it. I don't believe there was [sic] that many African-Americans in the jury panel. Based on my client's race and the allegations against him, I felt that is was important he was represented.

Movant's trial counsel further explained why he had not more closely questioned Venireperson Butler during voir dire:

Sometimes I felt really good about her I have to say basically her demeanor. At times,

I'm afraid if I start questioning her, she will say something that in other words that the State can turn around and strike her for. Because the way she was nodding along with me, I thought she was a pro-defense juror. It is one of the things where if you don't know the response, don't ask her. I've had it happen too in the past where I thought someone was asking too many questions. They stuck their foot in their mouth. They were struck for cause. I wanted to keep her.

The motion court concluded that trial counsel "gave credible testimony that this was trial strategy and [M]ovant accepted his strategic decisions with regard to jury selection."

Movant's trial counsel cannot be convicted of "ineffective assistance where the conduct complained of by the accused involves counsel's use of reasonable discretion in a matter of trial strategy." Goudeau, 152 S.W.3d at 419 (quoting Hamilton v. State, 892 S.W.2d 774, 784 (Mo. App. S.D. 1995). "It is only the exceptional case where a court will hold a strategic choice unsound." Id. Moreover, the decision to strike a venireperson is generally a matter of trial strategy and reasonable decisions regarding trial strategy cannot be the basis for an ineffective assistance of counsel claim. Boyd v. State, 86 S.W.3d 153, 158 (Mo. App. E.D. 2002).

Here, we cannot say the motion court's finding of fact and conclusions of law are clearly erroneous. Movant's trial counsel testified his decision not to strike Venireperson Butler was a matter of trial strategy. Trial counsel testified that he felt Venireperson Butler's body language during voir dire indicated that she would be sympathetic to the defense's argument. He testified that he believed it would be better to have Venireperson Butler serve on the jury as opposed to some of the other potential jurors. Furthermore, Movant's trial counsel testified that he did not ask Venireperson Butler more questions during voir dire because he did not want to give the State a reason to strike her. Movant failed to overcome the presumption that his trial counsel's decisions were based on sound trial strategy.

Moreover, Movant failed to prove he was prejudiced by his trial counsel's decision to leave Venireperson Butler on the jury. Movant is only entitled to a panel of jurors who are qualified, not to his favorite jurors among the qualified. Hightower v. State, 43 S.W.3d 472, 477 (Mo. App. S.D. 2001). The trial court has broad discretion to determine whether or not prospective jurors are qualified. Boyd, 86 S.W.3d at 158. A venireperson is qualified as a juror when he or she is able to enter upon that service with an open mind that is free from bias and prejudice. Venireperson Butler assured the trial court that she could be fair and impartial and the motion court found that her assurance was credible. Furthermore, Movant has not shown that having another qualified juror on the panel, instead of Venireperson Butler, would have made it reasonably probable that the result of the trial would have

been different. The motion court did not clearly err in denying Movant's Rule 29.15 motion as Movant failed to establish that his trial counsel was ineffective for failing to strike Venireperson Butler and that he was thereby prejudiced. The motion court's findings of fact and conclusions of law are not clearly erroneous. Point denied.

(Resp. Exh. J at 2-6) (internal footnote omitted).

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. <u>Id.</u> at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 412-13; <u>Carter v. Kemna</u>, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. <u>Carter</u>, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 410-11).

At the time Petitioner's conviction became final, the law was clearly established that in order

to obtain relief under the Sixth Amendment for ineffective assistance of counsel, a petitioner must show that counsel's performance was both deficient and prejudicial. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The crucial issue is whether the petitioner suffered material prejudice due to counsel's alleged deficient performance. Witherspoon v. Purkett, 210 F.3d 901, 903 (8th Cir. 2000). In order to show prejudice, Petitioner must establish that there is reasonable probability that but for trial counsel's unprofessional errors, the result of Petitioner's trial would have been different. Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In evaluating the probability of a different result, the court must consider the totality of the evidence. Id., 466 U.S. at 695. Rather than second-guessing counsel's actions with the benefit of hindsight, the reviewing court must examine counsel's decisions with a high degree of deference. Id., 466 U.S. at 689; White v. Helling, 194 F.3d 937, 941 (8th Cir. 1999) (the court "must resist the temptation to use hindsight to require that counsel's performance have been perfect. Only reasonable competence, the sort expected of the 'ordinary fallible lawyer' ... is demanded by the Sixth Amendment") (internal citation omitted). The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996). Furthermore, even if Petitioner show counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.

In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688. Petitioner must show

that his attorney's errors were so serious that they deprived him of his Sixth Amendment right to counsel and denied him his right to a fair trial. Id. Judicial scrutiny of counsel's performance must be highly deferential, and the petitioner must overcome the "strong presumption" that the challenged action might be considered sound trial strategy. Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." Id. In deciding a claim of ineffective assistance of counsel, the court must examine the specific "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and then "determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 691. In order to satisfy the prejudice prong, Petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

In addressing the claim, the Court of Appeals determined Petitioner not to have shown a reasonable probability of a different result if trial counsel had removed Venireperson Butler from the venire panel. Indeed, the court noted how Venireperson Butler assured the trial court that she could be fair and impartial and the motion court found that trial counsel "gave credible testimony" regarding his trial strategy in not striking the venireperson and not questioning her. (Resp. Exh. G at 155). Likewise, the Court of Appeals found trial counsel based his decision not to strike the venireperson as part of his trial strategy and noted how at the evidentiary hearing, trial counsel explained his reasons why including Venireperson Butler outweighed any potential negative effects from her

association with the prosecutor.  First, trial counsel noted that inasmuch as Petitioner is an African-American male accused of robbing at gunpoint, there would be the matter of police credibility and African-American jurors make better jurors based on his trial experience.  Next, trial counsel noted how the venireperson's mannerisms indicated she agreed with the points he made during voir dire and she appeared to be pro-defense.  Last, trial counsel explained that he decided not to question the venireperson for fear his questioning might cause the prosecutor to strike a venireperson he wanted to serve as a juror. For the following reasons, this decision was neither contrary to, nor involved an unreasonable application of clearly established federal law, and Petitioner's claim will be denied.

In the instant claim of ineffective assistance of counsel, Petitioner specifically contends that he received ineffective assistance of trial counsel in that counsel failed to strike, for cause or peremptorily, Venireperson Butler.  In addressing the claim, the Missouri Court of Appeals determined that the record refutes Petitioner's contention that "reasonable counsel would have followed up with questions for [Venireperson Butler] pertaining to the bias this relationship would presumably have caused" and would have moved to strike the venireperson for cause or peremptorily removed her.  (Resp. Exh. J at 3).  These findings are fairly supported by the record and this Court finds no basis for departing from that analysis.

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1).  Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States.  Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law.  Williams v.

Taylor, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court.  Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts.  Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001).  A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply.  Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407).  "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect."  Id. (quoting Williams, 529 U.S. at 410-11).

In the instant cause, the Court of Appeals articulated the Strickland standard of review (Resp. Exh. J at 2-3) and found Petitioner failed to establish that his trial counsel was ineffective for failing to strike Venireperson Butler and that he was thereby prejudiced.  Such determination was not contrary to, nor involved an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact.  This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such.  Therefore, it cannot be said that the state court's adjudication of the instant claims "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law.  28 U.S.C. §2254(d)(1).  Neither has Petitioner shown that the court's

determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d).

3. Ground 3

In his third ground for relief, Petitioner contends that his appellate counsel was ineffective for failing to raise on appeal the trial court's denial of his motion to suppress his statements. Petitioner raised this claim on direct appeal of the denial of his postconviction relief, and, upon review of merits of this claim, the Missouri Court of Appeals denied relief. (Resp. Exh. E at 6-9).

The Missouri Court of Appeals rejected this claim by finding:

> In his second point, Movant asserts the motion court erred in denying his Rule 29.15 claim that his appellate counsel was ineffective for failing to raise on direct appeal the issue of the trial court's denial of Movant's motion to suppress his statements, Movant maintains he was subject to a custodial interrogation without the benefit of a <u>Miranda</u> warning, and thus, the trial court erred in denying his motion to suppress, and his appellate counsel was ineffective for not raising the issue on direct appeal. We disagree.
>
> On October 10, 2001, after Movant was arrested for driving a stolen vehicle, he was taken to the Maryland Heights Police Department and interviewed. Before questioning Movant, the officer advised Movant of his <u>Miranda</u> rights. Movant indicated that he understood those rights and waived his rights verbally and in writing. During this interview, the officers questioned Movant about the stolen vehicle and the robbery. During this interview, Movant implicated another individual in the robbery. Movant was subsequently released.
>
> On October 11, 2001, the officers interviewed Movant's girlfriend and received information from her implicating Movant in the robbery. On October 12, 2001, the officers again arrested Movant and brought him to the Maryland Heights Police Department. An officer told Movant that they wanted to talk to him about the robbery, and told Movant the information that they received from his girlfriend. Movant began to cry and pound his fist on the table. An officer put his arm around Movant and told him that it was "time to tell the truth." Without any questions being asked, Movant began to talk about what had occurred. Movant stated that he "didn't mean to cause her [the store clerk] any harm," and that he "was never going to hurt

- 18 -

her [the store clerk]." Movant also stated that he "did it for Erica [his girlfriend] and her son." One of the officers quickly stopped Movant and again advised him of his <u>Miranda</u> rights. Movant then told the officers what occurred and agreed to make a videotaped confession. Prior to making the videotaped statement, Movant was again informed of his <u>Miranda</u> rights.

At trial, Movant filed a motion to suppress the statements. The trial court denied Movant's motion. In his post-conviction relief motion, Movant claimed he "was subject to a custodial interrogation without the benefit of a <u>Miranda</u> warning," and his statements should have been suppressed. Movant asserts that his appellate counsel was therefore ineffective for failing to raise the issue of the trial court's denial of his motion to suppress on direct appeal.

The motion court found that "[t]he evidence showed [M]ovant waived his right to counsel in writing and in a videotaped statement. Appellate counsel is not ineffective for failing to raise a nonmeritorious point on appeal."

To support a claim of ineffectiveness regarding an attorney representing the defendant on direct appeal from his or her convictions, "strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized and asserted it." <u>Franklin v. State</u>, 24 S.W.3d 686, 691 (Mo. banc 2000) (<u>quoting Moss v. State</u>, 10 S.W.3d 508, 514 (Mo. banc 2000)).

The mere lapse of time between the receipt of the <u>Miranda</u> warnings and the giving of incriminating statements does not require exclusion of the evidence. <u>State v. Brown</u>, 601 S.W.2d 311 (Mo. App. E.D. 1980) (finding that a three-day lapse after giving the warning did not require exclusion of an incriminating statement). Here, Movant was informed of his <u>Miranda</u> rights and waived those rights in writing two days prior to his statements and was again give a <u>Miranda</u> warning prior to Movant giving a videotaped statement. Movant has failed to show that his claim that the trial court erred in denying his motion to suppress would have required reversal had it been asserted and that it was so obvious from the record that a competent and effective appellate lawyer would have recognized and asserted it.

Movant relies heavily on the case of <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004) to support his claim that his motion to suppress should have been denied because interrogators should not question first and warn later. Movant's argument fails regardless of a finding that the current situation was similar to that of <u>Seibert</u> because <u>Seibert</u> was handed down by the United States Supreme Court on June 28, 2004, and Movant's appellate counsel filed his brief on May 7, 2003. We cannot find appellate counsel ineffective for failing to rely on a case not in existence at the time of the filing

of the brief.  The motion court did not err in denying Movant's claim of ineffective
assistance of appellate counsel and the motion court's findings of fact and conclusions
of law are not clearly erroneous.  Point denied.

(Resp. Exh. J at 6-9) (internal footnotes omitted).

The Strickland analysis is applicable to claims of ineffective assistance of appellate counsel.

See Harris v. Missouri, 960 F.2d 738, 740 (8th Cir. 1992).  The failure to raise an unwinnable issue

on appeal does not constitute ineffectiveness, rather, appellate counsel's "winnowing of the issues

to eliminate a sure loser is the kind of performance that courts expect from competent counsel."

Home v. Trickey, 895 F.2d 497, 500 (8th Cir. 1990).  More importantly, "[a] brief that raises every

colorable issue runs the risk of burying good arguments...."  Jones v. Barnes, 463 U.S. 745m 753

(1983).

In its decision denying Petitioner relief on his claim of ineffective assistance of counsel, the

Court of Appeals determined Petitioner not to have received ineffective assistance of appellate

counsel inasmuch as there was no merit to Petitioner's contention that he was subject to a custodial

interrogation without the benefit of a Miranda warning and thus appellate counsel was not ineffective

for not raising the nonmeritorious point on appeal.  Indeed, the court noted how the mere lapse of

time between the receipt of the Miranda warnings and the giving of the incriminating statements does

not require exclusion of the evidence.  The trial record shows that Petitioner was not subjected to

custodial interrogation without the benefit of a Miranda warning.  Officer Richard White testified as

to what occurred during Petitioner's October 12 interview after receiving information incriminating

him in relevant part as follows:

State: Did you take that information -- with that information, did you then decide to
re-interview Arthur Taylor?

- 20 -

Officer White: Yes, I did.

State: An prior to interviewing him, did you take him back into custody?

Officer White: Yes.

State: And you took him back to the Maryland Heights Police Department?

Officer White: Yes, I did.

State: At some point during that interview did you inform him of the information that you had learned from Erica Taylor, or Erica Schiele?

Officer White: Yes.

State: What was the contact that you had with Arthur Taylor? What statements did he make at that time?

Officer White: After-- when I brought Arthur Taylor back to the Maryland Heights Police Department, Arthur Taylor requested a cup of coffee, which I complied, got him a cup of coffee. Sat down in the interview room. And I advised Arthur at that time that I wished to speak with him regarding the robbery. Arthur broke down crying.

State: Prior to that, did you advise him of anything?

Officer White: No. I just told him I just wanted to talk to him again about the robbery. He began to cry uncontrollably, pounding his fist on the table. Detective Sergeant BovaConti was with me. He put his arm around him and told him, Arthur, it's time to tell the truth.

At that time, Arthur began to say -- he spontaneously uttered, I didn't mean to cause her any harm. I was never going to hurt her. I did it for Erica and her son.

At that time, I stopped Arthur. I told him that this was a very serious offense, that I needed to advise him of his Constitutional rights. I did so verbally. I then began to question Mr. Taylor regarding the robbery.

State: Okay. And you did not use a written form like you did on October 10th?

Officer White: No, sir....

\*\*\*\*

State: At this time he wanted to talk, and it was acceptable to advise him verbally of his rights?

Officer White: Yes.

State: Did he understand his rights?

Officer White: Yes, sir, he made a comment to me when I advised him verbally, he said something in the form of, Yeah, yeah, like the other day. I said, Exactly.

(Resp. A, Vol. II at 285-87). The Court of Appeals found that the record shows that Petitioner was informed of his Miranda rights and waived those rights in writing two days prior to his statements and was again given a Miranda warning prior to his giving a videotaped statement.

Counsel cannot be said to be ineffective in failing to pursue a matter upon which there is no reasonable likelihood of success. See Smith v. Armontrout, 888 F.2d 530, 545 (8th Cir. 1989); see also Burton v. Dormire, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise issue if no relief could possibly have been obtained); Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue). As such, the Missouri Court of Appeals reasonably determined counsel not to have been ineffective in his failure to raise a claim challenging the issue of the trial court's denial of Petitioner's motion to suppress his statements inasmuch as such claim had not merit. The decision of the Missouri Court of Appeals that counsel's failure to raise a non-meritorious issue on direct appeal did not constitute ineffective assistance was neither contrary to nor an unreasonable application of clearly established federal law. Nor does the record show that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In the instant cause, the Court of Appeals articulated the Strickland standard of review (Resp.

Exh. J at 2-3) and found Petitioner failed to establish that his appellate counsel was ineffective for failing to a nonmeritorious point on appeal and that he was thereby prejudiced. Such determination was not contrary to, nor involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claims "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d).

**IT IS HEREBY RECOMMENDED** that the petition of Arthur E. Taylor, Jr. for a writ of habeas corpus be **DISMISSED** without further proceedings.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right

to appeal questions of fact.  <u>See Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this  17th  day of February, 2010.


                                                    /s/ Terry I. Adelman
                                                  UNITED STATES MAGISTRATE JUDGE